UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PREMIER MEDICAL BILLING, INC.,

    Plaintiff,

v.                                                                    Case No: 8:18-cv-185-T-36AEP

GOTHAM FOOTCARE, INC.,

    Defendant.
_____/

## **ORDER**

This matter comes before the Court upon Plaintiff Premier Medical Billing, Inc.'s ("Premier") Motion to Remand (Doc. 7) and Defendant Gotham Footcare, Inc.'s ("Gotham") Response in Opposition (Doc. 11), as well as the Court's Order to Show Cause (Doc. 14) and Gotham's Response thereto (Doc. 16). Upon careful consideration, the Court finds that it lacks subject matter jurisdiction over this action. Moreover, even if the Court did have subject matter jurisdiction, the parties' forum selection clause requires that the action be maintained in Sarasota County, Florida. Accordingly, the Court will remand this case to the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

    **I.**    **BACKGROUND**

This action stems from Gotham's alleged breach of a Billing Services Agreement (the "Agreement") between Gotham and Premier. Under the Agreement, Premier would manage billing and collection services on behalf of Gotham, a medical provider, and Gotham would pay Premier a percentage of all income Gotham collected as a result of Premier's services. Doc. 4, pp. 5-12. The Agreement provides a "Termination" clause which states that either party may terminate the Agreement upon 90 days written notice. *Id.* at pp. 3, 9. During those 90 days, known as the

"Termination Period," Gotham would continue to submit billings to Premier and Premier would continue to service those bills and receive payment. *Id.* Following the Termination Period, Premier would continue to work to collect existing bills for another 90 days. *Id.* Those 90 days are known as the "Wind Down Period." *Id.*

Premier filed the instant lawsuit in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida on December 15, 2017, alleging that Gotham had sent Premier a letter earlier that month purporting to immediately terminate the Agreement. Doc. 2. The lawsuit seeks damages for Gotham's failure to pay Premier's November 2017 invoice and for Gotham's failure to comply with the Agreement's termination requirements. *Id.*; Doc. 3; Doc. 4.

Premier filed an Amended Complaint on December 18, 2017 and a Second Amended Complaint on January 11, 2018. Doc. 3; Doc. 4.[1] Premier's counsel e-mailed Gotham's counsel a copy of the Amended Complaint on the same day it was filed. Doc. 7, pp. 2, 31. On January 12, 2018, Gotham's counsel accepted service of process and waived formal service of process. Doc. 1-3, pp. 17-18.

Gotham filed its Notice of Removal in this Court on January 22, 2018, alleging that this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy exceeds $75,000. Doc. 1, ¶ 8. Premier filed the instant Motion to Remand, alleging (1) that the Agreement contains a forum selection clause which designates Sarasota County as the only proper venue for litigation concerning the Agreement and (2) that Gotham failed to timely file the Notice of Removal as required by 28 U.S.C. § 1446(b)(1). Doc. 7.

---

[1] The Second Amended Complaint is the operative complaint. The three complaints differ only marginally, and any differences are inconsequential for purposes of this Order. *See* Doc. 2; Doc. 3; Doc. 4. *See also* Doc. 7, ¶¶ 5, 7.

The Court issued an Order to Show Cause directing Gotham to respond to the Court's concerns about subject matter jurisdiction. Doc. 14. Besides noting the potential issue with respect to the forum selection clause, as raised in Premier's Motion to Remand, the Court expressed uncertainty that the amount in controversy was sufficiently alleged. Doc. 14.

Gotham filed a Response in Opposition to Premier's Motion to Remand and a Response to the Court's Order to Show Cause. Doc. 11; Doc. 16.

## II. LEGAL STANDARD

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982). "[F]ederal courts are courts of limited jurisdiction." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). And "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id*. at 410.

Removal of cases to federal court is governed by 28 U.S.C. § 1441, which provides in part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id*. § 1441(a). Parties seeking to invoke subject matter jurisdiction must show that the underlying claim is based upon either diversity jurisdiction (cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"), or the existence of a federal question (i.e., "all civil actions arising under the Constitution, laws, or treaties of the United States"). *See* 28 U.S.C. §§ 1331–1332.

"Removal of state court actions to federal court involves both jurisdictional and procedural considerations." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala.*, 168 F.3d at 411.

Forum selection clauses are interpreted "under the usual rules governing the enforcement of contracts in general." *P & S Business Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807-08 (11th Cir. 2003). Such clauses are presumptively valid and should be enforced unless the opposing party makes a "strong showing that enforcement would be unreasonable under the circumstances." *Rucker v. Oasis Legal Finance, LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). "The burden is on the party resisting the enforcement of a forum selection clause to establish fraud or inequitable conduct sufficient to bar enforcement of the clause." *Cornett v. Carrithers*, 465 Fed. Appx. 841, 843 (11th Cir. 2012) (citing *Rucker*, 632 F.3d at 1236).

### III. DISCUSSION

#### A. Removal is Timely

Untimely removal is a procedural defect that may warrant remand. *In re Uniroyal Goodrich Tire Co.*, 104 F.3d 322, 324 (11th Cir. 1997). A notice of removal of a civil action "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b)(1).

In its Motion to Remand, Premier argues that Gotham failed to timely file its Notice of Removal because it did not do so until January 22, 2018, five days past the 30-day limit. According to Premier, the 30-day clock began when its attorney sent Gotham's attorney an e-mail on

4

December 18, 2017 attaching a copy of the Amended Complaint. Doc. 7, pp. 3, 31. Premier's argument is without merit.

"Despite the possible implication of the statutory language, a defendant's mere receipt of the complaint unattended by any formal service does not trigger the defendant's timeline to remove a case from state court." *Blair v. Philips Elecs. N. Am. Corp.*, No. 8:16-CV-3529-T-30JSS, 2017 WL 565075, at *1 (M.D. Fla. Feb. 13, 2017) (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999)). Rather, the 30-day clock is triggered only when the defendant has been formally served or has waived service. *Id. Accord Island Pipeline, LLC v. Sequoyah Ltd., LLC*, No. 3:08–cv–1133–J–32HTS, 2009 WL 413584, at *3 (M.D. Fla. Feb. 18, 2009) (citing *Murphy Bros.*, 526 U.S. at 347-48).

The Notice of Removal shows that Gotham's counsel waived formal service of process and accepted service on January 12, 2018. Doc. 1-3, p. 17. The Notice of Removal was filed in this Court on January 22, 2018, well within 30 days of Gotham's waiver of formal service. Doc. 1. Therefore, removal is timely.

**B. The Amount in Controversy is not Satisfied**

As discussed in the Court's Order to Show Cause, with respect to the requisite amount in controversy, Gotham's Notice of Removal relies on (1) Premier's settlement demand, which sought $132,240.70 to settle its claim and (2) the allegations in the Second Amended Complaint which state that Premier seeks $21,225.76 for its outstanding November 2017 invoice plus payment for between 90 and 180 additional days of service that Premier would have rendered had Gotham not terminated the contract. Doc. 1, ¶¶ 5-7; Doc. 1-3, pp. 19-20. Based on this and the parties' prior payment history (approximately $20,000 per month paid to Premier for billing

5

services, according to Gotham), Gotham calculates that Premier is seeking between $81,225.76 and $141,255.76. Doc. 1, ¶ 7.

In the Order to Show Cause, the Court stated that it was not persuaded by Premier's settlement offer or by Gotham's calculation because the Agreement calls for contingency payments based on a percentage of Premier's recovery from its collection efforts. Doc. 14, p. 3. In response, Gotham argues that the Court may properly consider future payments in determining the amount in controversy here because the payments themselves are not contingent or speculative. Doc. 16, p. 3. Gotham states, "if Premier were to prevail in this litigation, Gotham would be required to pay Premier five percent of its net receipts for the six month period following the termination of the [Agreement]." *Id.* Accordingly, Gotham argues, the Court need only calculate Gotham's receipts from a prior six month period, apply Premier's percentage, and add $21,225.76 (the November 2017 outstanding invoice amount) to calculate the amount in controversy. *Id.* at pp. 3-4. Gotham further argues that Premier's settlement demand, which contains a similar calculation, provides additional evidence that the amount in controversy is satisfied. *Id.* at p. 4. The Court finds Gotham's reasoning unpersuasive.

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* "[T]he burden of proving jurisdiction lies with the removing defendant." *Id.* at 1319. The removing defendant must establish the jurisdictional amount by a preponderance of the evidence. *Lowery*, 483 F.3d at 1208. The absence of sufficient factual

6

allegations pertinent to the amount in controversy is "dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Id.* at 1215.

A court's analysis of the amount in controversy requirement focuses on how much is in controversy at the time of removal, not later. *See Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 946 (11th Cir. 2000) (holding that a court may consider evidence submitted after the removal petition is filed, "but only to establish the facts present at the time of removal"). The following evidence can support a basis for meeting the amount in controversy requirement: specific factual details, discovery, affidavits or declarations, testimony, interrogatories, and exhibits. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753-55 (11th Cir. 2010). That evidence combined with "reasonable deductions, reasonable inferences, or other reasonable extrapolations" will permit the Court to determine if the amount in controversy requirement is met. *Id.* at 754.

Although pre-suit demand letters can be used to support the amount in controversy in a removal, they are not dispositive. *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 3:10-CV-615-J-32JRK, 2010 WL 6790539, *2 (M.D. Fla. Nov. 5, 2010). Instead, to determine whether the amount in controversy is satisfied, courts have analyzed whether demand letters merely "reflect puffing and posturing," or whether they provide "specific information to support the plaintiff's claim for damages" and thus offer a "reasonable assessment of the value of [the] claim." *Id.* (quoting *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)).

The Court finds Gotham's allegations with respect to its future payments (the additional 90 to 180 days) to be too speculative. First, Premier's payments under the Agreement were based on a percentage of Premier's recovery from its collection efforts—not a percentage of Gotham's total bills, as Gotham seems to imply. Second, what Premier might have collected for Gotham

7

during any given month—and thus, what Premier would have earned—had the potential to differ significantly because it relied upon the amount of business Gotham did, the number of bills Gotham turned over to Premier, and Premier's own efforts. Such variation is even shown by the materials presented to the Court. *See* Doc. 1-3, p. 19. For example: in December 2016, Premier collected $510,550.66 for Gotham and invoiced Gotham for $28,080.29. *Id.* Two months later, however, Premier collected less than half as much for Gotham: $251,410.78. *Id.* That month, Premier invoiced Gotham for $13,827.59. *Id.*

Even if Premier's collections did not have the potential to vary so greatly and could be averaged for purposes of calculating what Premier might have earned during the 90-day Termination Period, the same could not be done for the subsequent 90-day Wind Down Period, during which time Premier would no longer be receiving new bills for collection.

Gotham cites to *Stuckey v. Cintas Corp.*, No. 3:13-cv-1060-J-32JBT, 2013 WL 12202925 (M.D. Fla. Nov. 18, 2013) for the proposition that the Court may consider future payments due when those payments are at issue. But the future payment discussed in *Stuckey* was for an amount certain on which no condition was placed. *Id.* at *4. Here, payments to Premier were contingent upon at least three factors: the amount of business Gotham did, the amount of bills Gotham turned over to Premier, and the amount Premier was able to collect on Gotham's behalf.

As discussed in the Court's Order to Show Cause, the Court also does not find the settlement demand from Premier persuasive for purposes of determining the amount in controversy. Although the settlement demand purports to explain the amount Premier believes it is owed, it does not offer a reasonable assessment of the value of its claim for purposes of diversity jurisdiction because it is based on past billing, which, as discussed above, is not necessarily reliable in calculating the amount Premier may have been due for future services.

Gotham has failed to prove by a preponderance of the evidence that Premier's claim exceeds $75,000. Because Gotham fails to sufficiently allege the requisite jurisdictional amount, this Court lacks subject matter jurisdiction.

### C. The Forum Selection Clause Mandates Litigation in Sarasota County, Florida

Even if the amount in controversy were satisfied and the Court had subject matter jurisdiction over this action, the case would still be remanded because Premier seeks to enforce the parties' valid forum selection clause.

With respect to venue, the Agreement provides: "Venue. Sarasota County, Florida, shall be the venue for any legal proceedings concerning the enforcement or the construction of this Agreement. This provision shall survive the expiration or termination of this Agreement." Doc. 4, p. 10. Based on this language, Premier argues this case should be remanded to the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida because the Agreement restricts venue to that court. Gotham responds that the Agreement does not waive Gotham's right to litigate in federal court and that such a conclusion that Gotham did waive its right to litigate in federal court would be unjust.

The Court agrees with Premier that the Agreement proscribes litigation in this Court. When a forum selection clause in a contract "provides that venue 'shall be' in a Florida county with no federal courthouse in that county, the clause precludes removal to federal court." *AO Precision Mfg. LLC v. High Standard Mfg. Co.*, No. 6:14-CV-1203-ORL-31GJK, 2014 WL 4983801, at *3 (M.D. Fla. Oct. 6, 2014). *Accord Cornett*, 465 Fed. Appx. at 843 (applying *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)); *Millennium Medical Mgmt., LLC v. Ling Li*, No. 6:12–cv–663–Orl–31DAB, 2012 WL 1940112, at *2 (M.D. Fla. May 29, 2012).

9

Here, the forum selection clause provides that "Sarasota County, Florida, shall be the venue." Doc. 4, p. 10. Although Sarasota County is within the Middle District of Florida, no federal court is located in Sarasota County, Florida. Accordingly, the forum selection clause in the Agreement precludes removal to this Court.

Gotham cites *Global Satellite* for the proposition that a mandatory forum selection clause does not preclude federal jurisdiction unless it is clearly intended to do so.[2] But the result in *Global Satellite*—and the comment that the non-prevailing party could have stated its intention more precisely—was guided by a different set of facts. 378 F.3d at 1274.

In *Global Satellite*, the Eleventh Circuit held that a clause which provided that venue "shall be in Broward County, Florida" did not preclude removal because "suit either in the Seventeenth Judicial [Circuit] of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, both of which are located in Broward County, would satisfy the venue requirement." *Id.* at 1272. Although the Eleventh Circuit determined suit must be brought in Broward County, Florida, it could not determine which of several forums in Broward County, state or federal, the forum selection clause intended to designate. *Id.* at 1272-74. Accordingly, the Eleventh Circuit found that litigation in the federal court located in Broward County (the Southern District of Florida, Fort

---

[2] Gotham also cites to *Mosaic Fertilizer, LLC v. Van Fleet Int'l Airport Dev. Grp., LLC*, 486 Fed. Appx. 869, 872 (11th Cir. 2012) for the same proposition. However, the language in the forum selection clause there is different. Moreover, at least one court in this District has declined to follow *Mosaic Fertilizer*, which is an unpublished decision. *See FCCI Ins. Co. v. Mountain Reclamation & Const., LLC*, No. 8:17-cv-2027-T-23AAS, 2017 WL 6512555, at *2, n. 3 (M.D. Fla. Dec. 20, 2017).

The other district court cases Gotham cites dealing with waiver of the removal right are inapposite. *Johnston v. Tampa Sports Auth.*, 410 F. Supp. 2d 1143, 1144 (M.D. Fla. 2005) (whether defendants waived removal by filing an appeal from state court's issuance of preliminary injunction); *Linder v. DDR Realty Corp.*, No. 14-81452-CIV, 2015 WL 12791479, at *1 (S.D. Fla. Apr. 27, 2015) (whether defendant waived its right to remove by filing a motion to dismiss and propounding discovery in state court prior to removal); *Ayes v. H & R of Belle Glade, Inc.*, No. 08-21038-CIV-UNGARO, 2008 WL 1840714, at *2 (S.D. Fla. Apr. 22, 2008) (whether defendant waived removal by filing a motion and setting that motion for hearing in state court); *Miami Herald Pub. Co., Div. of Knight-Ridder Newspapers v. Ferre*, 606 F. Supp. 122, 124 (S.D. Fla. 1984) (whether defendants waived removal by first filing their answer and affirmative defenses in state court).

Lauderdale Division) was appropriate under the forum selection clause. *Id.* Unlike in *Global Satellite*, here, no federal courts are present in the geographic location designated by the forum selection clause.

Next, Gotham attempts to distinguish this case from *Cornett*, which held that a forum selection clause providing that "venue shall be in Suwannee County, Florida" precluded removal and designated litigation in the Circuit Court for the Third Judicial Circuit, the only court situated in Suwannee County, Florida. 465 Fed. Appx. at 843. Gotham argues that the forum selection clause in *Cornett* was the product of "extensive" discussions and negotiations between the parties, whereas here, there is no evidence that the forum selection clause was the result of any discussions or negotiations.

Gotham infers that the parties in *Cornett* negotiated the forum selection clause extensively based on a single sentence in the district court opinion which states that the forum selection clause there was "the product of an extensive settlement agreement between the parties and their counsel." *Cornett v. Carrithers*, No. 3:11–cv–191–J–37TEM, 2011 WL 13175196, at *1 (M.D. Fla. July 27, 2011), *aff'd*, 465 Fed. Appx. 841 (11th Cir. 2012). The Court declines to read this sentence as broadly as Gotham. Moreover, it was a plain reading of the forum selection clause—not the extent of the parties' negotiations—that informed the Eleventh Circuit's decision in *Cornett*.

Lastly, Gotham argues that "following *Cornett v. Carrithers* would cause an injustice" to Gotham. Doc. 11, p. 5. Gotham argues that forcing it, a New York resident, to defend itself against a Florida plaintiff in a Florida court would deprive Gotham "of protection from the local prejudices of state courts and undermin[e] the primary purpose of the right of diversity removal." *Id.* This argument is unpersuasive.

11

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (internal quotation marks omitted). Forum selection clauses are presumptively valid and should be enforced unless the opposing party makes a strong showing that enforcement would be unreasonable under the circumstances. *Rucker v. Oasis Legal Finance, LLC*, 632 F.3d at 1236. Accordingly, a court may refuse to enforce a forum selection clause only in certain circumstances, such as when "its formation was induced by fraud or overreaching" or if "enforcement of the clause would contravene public policy." *Id.* "The burden is on the party resisting the enforcement of a forum selection clause to establish fraud or inequitable conduct sufficient to bar enforcement of the clause." *Cornett*, 465 Fed. Appx. at 843 (citing *Rucker*, 632 F.3d at 1236).

Gotham cites no legal authority providing that a court should decline to enforce a forum selection clause when it requires an out of state defendant to litigate in a plaintiff's home state. Indeed, the Supreme Court has recognized that enforcement of forum selection clauses may displace some aspects of traditional public policy; nonetheless, forum selection clauses are generally enforced based on the parties' expectations pursuant to a valid contract. *See generally M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Atl. Marine Const. Co.*, 571 U.S. at 63. Based on the parties' submissions, the Court can infer only that Gotham freely and fairly negotiated with Premier to enter into a valid agreement, and that any effect of Gotham being forced to litigate in Sarasota County, Florida was foreseeable at the time of contracting. *See P & S Business Machs., Inc.*, 331 F.3d at 807; *Rucker*, 632 F.2d at 1237. Gotham offers no explanation why enforcement of the forum selection clause would be "unreasonable" under the circumstances, nor does Gotham suggest the forum selection clause was the product of fraud or duress. Simply put, Gotham fails to

make a "strong showing" that enforcement of the forum selection clause would be unreasonable here.

The forum selection clause requires that the parties litigate in the courts located in Sarasota County, Florida. Accordingly, the Court will remand this case to the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

Accordingly, it is hereby **ORDERED:**

1. Premier's Motion to Remand (Doc. 7) is **GRANTED.**

2. This case is **REMANDED** to the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

3. The Clerk is directed to send a certified copy of this Order to the Clerk of Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

4. The Clerk is further directed to terminate all pending deadlines and motions and to close this case.

**DONE AND ORDERED** in Tampa, Florida on August 27, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any